UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Cynthia K.

          v.                          Civil No. 19-cv-1129-JD
                                      Opinion No. 2020 DNH 092
Portsmouth School Department

O R D E R

    This is a case brought under the Individuals with
Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400, et
seq.  The plaintiff, Cynthia K., challenges the decision of a
New Hampshire Department of Education hearing officer that
Portsmouth School Department is not required to pay for an
independent educational evaluation ("IEE") of her son, S.K.
Portsmouth School Department ("Department") asks the court to
affirm the hearing officer's decision.

Statutory Framework

    The purpose of the IDEA includes "ensur[ing] that all
children with disabilities have available to them a free
appropriate public education ["FAPE"]" and "ensur[ing] that the
rights of children with disabilities and parents of such
children are protected." 20 U.S.C. § 1400(d)(1)(A) & (B); J.S.
v. Westerly Sch. Dist., 910 F.3d 4, 7 (1st Cir. 2018).  Under
the IDEA, school districts are required to find and evaluate

children with disabilities who live in the school district and who may require special education or related services. 20 U.S.C. § 1412(a)(3)(A). New Hampshire receives federal funds in order to provide FAPE for its children, under the IDEA, and has enacted policies and procedures for the required educational services. Manchester Sch. Dist. v. Crisman, 306 F.3d 1, 10 (1st Cir. 2002).

Before special education and related services are provided, however, a state or local educational agency must conduct "a full and individual initial evaluation." 20 U.S.C. § 1414(a)(1)(A). Once an initial evaluation is done, if the parent disagrees, the parent may request that the school district provide an IEE at public expense. 34 C.F.R. § 300.502(b)(1). In response, the school district may either pay for an IEE or file a due process complaint to request a due process hearing to show that the initial evaluation is appropriate.[1] § 300.502(b)(2). At a hearing under § 300.502(b)(2), the school district bears the burden to show that

_____

[1] A parent may file a due process complaint to challenge "the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child." 34 C.F.R. § 300.507; Collette v. District of Columbia, 2019 WL 3502927, at *2 (D.D.C. Aug. 1, 2019). Cynthia K. did not file a due process complaint to challenge the eligibility determination, and instead requested an IEE.

the initial evaluation is appropriate.  Id.  A party who
disagrees with the hearing officer's decision may bring a civil
action in this court.  20 U.S.C. § 1415(i)(2).


## Standard of Review

In an IDEA case seeking review of the decision of a hearing
officer, the court "shall receive the record of the
administrative proceedings; . . . shall hear additional evidence
at the request of a party; and basing its decision on the
preponderance of the evidence, shall grant such relief as the
court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).
Despite that seemingly straightforward statutory provision, in
reviewing the administrative record and other evidence, the
court is instructed to apply a standard of "involved oversight,
a standard which falls somewhere between the highly deferential
clear error standard and the non-deferential de novo standard."
South Kingston Sch. Comm. v. Joanna S., 773 F.3d 344, 349 (1st
Cir. 2014).  To implement involved oversight, the court makes an
independent ruling, by a preponderance of the evidence, from the
administrative record and any other evidence introduced, but
that independent review must be "tempered by the requirement
that the court give due weight to the hearing officer's
findings."  Johnson v. Boston Pub. Schs., 906 F.3d 182, 191 (1st

Cir. 2018).   The party seeking review bears the burden of
showing that the hearing officer's decision is wrong.   Del
Rosario v. Nashoba Reg'l School District, 419 F. Supp. 3d 210,
220 (D. Mass. 2019).

Background

A.   Factual Background[2]

In the fall of 2017, S.K. enrolled at New Franklin School
in the Portsmouth School Department as a kindergarten student.
After he enrolled, the Department received S.K.'s early
intervention records, records from when S.K. was referred for
special education at the age of three, medical treatment
records, and other treatment and evaluation records.   Cynthia K.
made a written referral of S.K. for special education, but the
Department decided not to evaluate him at that time.   The
Department did develop a "Section 504 Plan" for S.K. to address
feeding issues and impulsivity.[3]

---

[2] The background information is summarized from the parties'
joint statement of material facts.   See doc. no. 10.   Each party
also filed a list of disputed facts, which have been reviewed
and are referenced as necessary.

[3] Section 504 presumably refers to Section 504 of the
Rehabilitation Act of 1973 that requires non-discriminatory
access to public institutions, including schools.   Doucette v.
Georgetown Pub. Schs., 936 F.3d 16, 24-25 (1st Cir. 2019).

During kindergarten, S.K.'s behavior caused his teacher to request school intervention services.  The Department's Section 504 Team developed a Section 504 Plan to provide accommodations for S.K.'s "dysphagia and h [sic] impulsivity."  Doc. no. 10 at 3.  In December of 2017, S.K.'s kindergarten teacher requested school intervention services because of S.K.'s frequent disruptive and noncompliant behavior.  The school developed an action plan to address those issues and added counseling and a behavior plan to S.K.'s Section 504 Plan.  In April of 2018, the Section 504 team added accommodations for S.K.'s impulsivity and physical therapy to his Section 504 Plan.

S.K.'s behavior issues continued into first grade.  The special education coordinator at New Franklin School referred S.K. for a "Functional Behavior Assessment" because of his noncompliant and unsafe behavior.  The assessment was done by Dr. Jodi Deming between October 16 and November 6, 2018, and resulted in a report with a recommended positive behavior plan.  The short-term objective was to reduce S.K's daily noncompliance level by 75% and his weekly unsafe behavior level by 90%.  The plan included programming to teach S.K. about ways to cope, to communicate, and to change his behavior.

On November 14, 2018, Cynthia K. wrote to Principal Joanne Simons to request a referral to special education for S.K.  A

meeting was held on November 28, which was attended by a speech language pathologist, Jaclyn Nutter; the "LEA [Local Educational Agency] Rep," Jeffery Martell; an occupational therapist, Jill Vinciguerra; case manager Tracie Gebhardt; Cynthia K.; Principal Simons; K-1 case manager, Alison Bedard; and first grade teacher, Erin Lane.  After discussion, that group, referred to as the "IEP [Individual Education Plan] Team," decided to add paraprofessional support in S.K.'s classroom, include functional behavior assessment recommendations, and to complete assessments for special education.

The Department issued a "Written Prior Notice" on November 28, 2018, to evaluate S.K. for his eligibility for special education.  The Department proposed to evaluate S.K. in the areas of academic performance, social and emotional status, intelligence, motor ability, and classroom observation for suspected disabilities in the categories of "other health impaired" and "specific learning disability."  S.K.'s IEP Team did not consider his eligibility for special education under the category of "developmental delay."  Cynthia K. signed a consent form for evaluating S.K. in the listed categories.  Four referral questions were posed for the evaluations:  "What are [S.K.'s] academic skills?  What is [S.K.'s] learning profile?

What are [S.K.'s] fine motor skills?  What are [S.K.'s] social/emotional strengths, weaknesses?"  Doc. no. 10, at *6.

S.K.'s Section 504 team met on January 11, 2019, to review the Functional Behavioral Assessment and Recommended Behavior Support Plan submitted in November of 2018.[4]  S.K's Section 504 Plan was amended to include a classroom paraprofessional to assist in addressing S.K.'s impulsivity issues.  The Section 504 Plan was amended again to address S.K.'s anxiety issues.

On January 14, 2019, Tom Reynolds, a school psychologist employed by the Department did a psychological evaluation of S.K.  Reynolds reviewed S.K.'s file for background information. He administered standardized tests for measuring intelligence and behavior.  S.K.'s full scale IQ score was 97, which is average.  S.K.'s teacher gave scores on his behavior that were in the at risk category.  Another teacher who worked for the Department tested S.K. to assess his academic performance and found that S.K. was in the normal range.  Testing for motor skills showed that S.K. was in the average range, except for fine motor skills that were adversely affected by S.K.'s distractibility.

---

[4] The parties do not explain whether the members of the IEP Plan Team and the Section 504 Plan Team were the same.  The court will refer to the teams as provided in the factual statement.

The Department held a meeting on January 22, 2019, to review the assessments that had been done.  The meeting reviewed a "Written Prior Notice" that included background information and the assessment results, and also referred to S.K.'s Section 504 Plan.  The Eligibility Determination Form, completed on January 22, 2019, stated that S.K. has attention deficit hyperactivity disorder that adversely affects his educational performance but concluded that he did not require special education.  The Department employees at the meeting signed the form in agreement with its conclusion, and Cynthia K. signed but disagreed with the conclusion.

An IEP meeting was held on March 5, 2019, to review the decision made on January 22 that S.K. was not eligible for special education.  The group reviewed the record, including the evaluation results.  The Department representatives reported that S.K. did not have cognitive impairment that impacted his academic achievement and that S.K. was within the average range. Cynthia K. said that she thought S.K. needed specially designed instruction and relied on assessments done when S.K. was an infant.  The Department representatives stated that with the accommodation of a paraprofessional, S.K. was "accessing" the general school curriculum.  As a result, they found that S.K. was not eligible for special education under the categories of

other health impaired or specific learning disability.  The
Eligibility Determination forms were signed by Department
representatives, agreeing that S.K. was not eligible for special
education, and Cynthia K. signed in disagreement.

On April 30, 2019, Cynthia K. requested an IEE at public
expense in the areas of cognitive functioning, academic skills,
physical therapy, and sensory processing.  The Department denied
her request.


B.  Procedural Background

On May 23, 2019, the Department filed a complaint seeking
an impartial due process hearing on whether Cynthia K. was
entitled to an IEE at public expense.  The New Hampshire
Department of Education scheduled mediation, but that was
unsuccessful.  A due process hearing was scheduled for July 22
and 23, 2019, and Amy B. Davison was appointed to serve as the
hearing officer.

A prehearing conference was held on June 25, 2019.  The
hearing officer issued a prehearing conference report and order
on June 26, 2019.  In its prehearing statement, the Department
asserted that Cynthia K.'s request for evaluations in the areas
of sensory processing and physical therapy did not pertain to
the suspected disability areas of other health impaired or
specific learning disability.  The hearing officer issued a

prehearing conference report and order and identified the issue for the hearing as "whether the District's evaluations are appropriate, and whether Parent is entitled to an IEE at public expense."  Admin. Record at Part F.

The hearing was held as scheduled.  The Department submitted 151 requests for findings of fact and rulings of law. Cynthia K. submitted sixty-four requests for findings and rulings.

The hearing officer issued her due process decision on August 2, 2019.  She made 22 findings of fact and 7 legal rulings.  She did not individually address the parties' requests for findings and rulings, and instead stated that she reviewed and considered the requests and that they were denied to the extent they were inconsistent with her decision.  She concluded that the Department's evaluation of S.K. was appropriate and that Cynthia K. was not entitled to an IEE at public expense. Cynthia K. filed the complaint in this court on October 30, 2019.  The parties have filed factual statements, decision memoranda, and responses.

## Discussion

Cynthia K. asks the court to reverse the due process decision and to find that she is entitled to an IEE at public

expense.  In support, she contends that the hearing officer

erred as a matter of law by limiting her decision to the issue

of whether the Department's evaluations of S.K. were

appropriate.  She argues that the hearing officer was also

required to decide whether the determination that S.K. was not

eligible for special education was correct.  She further

contends that the Department's evaluations were not appropriate

for a variety of reasons, both substantive and procedural.  The

Department contends that the due process decision should be

affirmed.


A.   Scope of the Issue Presented for Due Process Hearing and for
     Judicial Review

     Cynthia K. argues that the hearing officer erred as a

matter of law by limiting the scope of review to whether the

evaluations done by the Department were appropriate.  The

hearing officer stated the following in her decision:

> The criteria for determining whether the District's
> evaluation is appropriate is whether assessments were
> administered in accordance with criteria set forth in
> applicable state and federal law, including whether
> qualified personnel and appropriate instruments were
> used, whether the student was assessed in all
> suspected areas of disability, and whether
> methodologies were adequate.

Hearing Decision at *4.  In support, the hearing officer cited "34 C.F.R. § 300.310-305."[5]  Cynthia K. does not dispute the standard the hearing officer articulated for her decision but instead contends that the hearing officer erred as a matter of law by not citing § 300.301 through § 300.311, which would include regulations for the eligibility determination.

1.  Evaluation Process

In essence, Cynthia K. argues that the hearing officer should have reviewed the eligibility decision as part of the due process hearing on whether the Department's evaluations were appropriate.  She is mistaken.

"Evaluation means procedures used in accordance with §§ 300.304 through 300.311 to determine whether a child has a disability and the nature and extent of the special education and related services that the child needs."  34 C.F.R. § 300.15. Sections 300.304 and 300.305 provide the required procedures for conducting evaluations and reevaluations.  L.D. v. Anne Arundel County Public Schools, 2019 WL 6173818, at *4 (D. Md. Nov. 20, 2019); Parent on Behalf of Student v. Garvey School District, 2019 WL 6729763, at *9 (C.D. Cal. Aug. 27, 2019).

---

[5] That citation appears to contain a typographical error and probably should have been 34 C.F.R. §§ 300.301 – 300.305.  It is not clear why the hearing officer provided that range of applicable regulations.

Under the regulations that govern evaluations, the school
district is required to "[u]se a variety of assessment tools and
strategies to gather relevant functional, developmental, and
academic information about the child . . . that may assist in
determining [w]hether the child is a child with a disability
. . . and [t]he content of the child's IEP." 34 C.F.R.
§ 300.304(b)(1).  The school district must also use "technically
sound instruments" for assessing "the relative contribution of
cognitive and behavioral factors."  § 300.304(b)(3).  The school
district must not "use any single measure or assessment as the
sole criterion for determining whether a child is a child with a
disability and for determining an appropriate educational
program."  § 300.304(b)(2).  Additional requirements for
conducting evaluations are provided in § 300.305.

The initial evaluation process is preliminary to and
different from the eligibility determination.  See 34 C.F.R.
§ 300.306 (stating that "[u]pon completion of the administration
of assessments and other valuation measures," the eligibility
determination will be made in accordance with the provided
process).  The evaluation process includes the procedures,
assessment tools, and strategies that the Department used "to
gather relevant functional, developmental, and academic
information about the child" to assist in making the eligibility
determination.  § 300.304(b)(1).  A parent's challenge to the

13

outcome of evaluations, rather than to the methodology used, is inapposite in the context of review of a hearing officer's decision that a parent is not entitled to an IEE at public expense. [6] E.P. By and Through J.P. v. Howard County Pub. Sch. Sys., 2017 WL 3608180, at *35 (D. Md. Aug. 21, 2017).

### 2.  Areas for Evaluation

Cynthia K. argues that the Department's evaluations did not constitute a "full evaluation" because the Department did not evaluate S.K. for eligibility in the area of developmental delay.  She argues, as a generality, that every possible category of disability must be evaluated, whether or not it is a suspected disability.  The applicable regulation provides, however, that "[t]he child is assessed in all areas related to the suspected disability, including, if appropriate, health,

---

[6] Cynthia K. cites "D.S., by and through his Parents and next friends, M.S. and R.S., v. Trumball, 57 F. Supp. 3d 166, 167 (D. Conn. 2019)," in support of her theory that the hearing officer must consider the eligibility requirements and determination in a due process hearing for an IEE.  The correct citation is 357 F. Supp. 3d 166.  It is unclear what Cynthia K. was citing on page 167.  Further, in that case, the court noted that the IDEA does not provide a free standing right to a publicly-funded IEE and instead that the right "must be premised on actual *disagreement* with an evaluation that the school district has conducted."  Id. at 176.  The court held that the parents were not entitled to a publicly funded IEE for additional assessments that were beyond the scope of the district's evaluation.  Id. at 178.  The case does not appear to support Cynthia K.'s position here.

vision, hearing, social and emotional status, general
intelligence, academic performance, communicative status, and
motor abilities." 34 C.F.R. § 300.304(c)(4) (emphasis added);
Rose Tree Media Sch. Dist. V. M.J., 2019 WL 1062487, at *3 (E.D.
Pa. Mar. 6, 2019). Cynthia K. provides no contrary authority
and has not shown that a different rule applies, generally or in
this case.

More specific to the Department's evaluation of S.K.,
Cynthia K. argues that S.K.'s record documented a developmental
delay in adaptive behavior.  She further argues that, under 34
C.F.R. § 300.306(c)(1), the Department was obligated to
carefully consider that information and failed to do so when it
did not find a suspected disability due to developmental delay.

Section 300.306, however, is titled "Determination of
Eligibility" and subsection c is titled:  "Procedures for
determining eligibility and educational need."  Subsection
(c)(1) states:  "In interpreting evaluation data for the purpose
of determining if a child is a child with a disability under
§ 300.8, and the educational needs of the child, each public
agency must—(i) Ensure that information obtained from all of
these sources is documented and carefully considered."  As such,
the cited regulation does not support Cynthia K.'s argument.

The Department points out that the hearing officer
correctly found that S.K.'s team, which included Cynthia K.,

decided that he had suspected disabilities in the areas of
specific learning disability and other health impaired.  They
did not suspect a disability due to developmental delay.
Cynthia K. did not request an evaluation for developmental
delay.  Cynthia K. did not challenge the Department's
evaluations for failing to address developmental delay and did
not request an IEE to address developmental delay.  She has not
shown that the hearing officer's decision is wrong because it
did not find the Department's evaluations were inappropriate due
to lacking evaluations for developmental delay.[7]

3.  Hearing and Decision

The due process hearing was held in response to the
Department's complaint under § 300.502(b) on the issue of
whether the evaluations of S.K. were appropriate or whether
Cynthia K. was entitled to an IEE at public expense.  Although,
as is noted above, there is a process available to challenge a
determination that a child is not eligible for special
education, Cynthia K. has not initiated that process.  Cynthia

---

[7] The Department also points out that Cynthia K., who is
represented by counsel, failed to provide a response to the
Department's due process complaint as is required by 34 C.F.R.
§ 300.508(f).  The complaint listed the two suspected areas of
disability, and Cynthia K. is deemed to have found the complaint
to be sufficient.  § 300.508(d).

K.'s convoluted presentation of the statutory and regulatory process is not persuasive.

The issue before the hearing officer was whether the Department could show that its evaluations of S.K. were appropriate.  The different issue of whether S.K. was eligible for special education was not before the hearing officer and is not before this court.  Therefore, Cynthia K. has not shown that the hearing officer erred as a matter of law by focusing on the issue presented to her:  whether the Department's evaluations in the suspected disability areas of other health impaired and specific learning disability were appropriate.

B.  Evaluations

Cynthia K. asserts that the hearing officer's decision is wrong in a variety of ways, most of which pertain to the Department's eligibility determination, rather than to the evaluation process.[8]  Because eligibility is not before the court, those issues will not be addressed.

---

[8] Cynthia K. also argues that the use of Section 504 Plan accommodations during Bedard's testing was not appropriate and is an admission that S.K. is eligible for special education. She cites Reynolds's hearing testimony but does not cite authority to show that those accommodations were improperly used during Bedard's testing.  Because that issue can be addressed in an IEE, it need not be resolved here.

One challenge to the evaluation process, however, has merit.  Cynthia K. argues, and the Department does not dispute, that the Department was required to conduct a classroom observation of S.K. "to document the child's academic performance and behavior in the areas of difficulty."  34 C.F.R. § 300.310(a); see also § 300.305(a)(1)(ii) (requiring an IEP Team to review classroom-based observations for purposes of an initial evaluation).  To that end, the group assessing whether the child has a specific learning disability, see § 300.306(a)(1), may decide to use information from a classroom observation that was done before the child was referred for an evaluation or may have a member of the assessing group conduct the classroom observation after referral and after obtaining consent from the parent.  § 300.310(b).  Here, the group obtained Cynthia K.'s permission for classroom observation after the referral.

Cynthia K. contends that the hearing officer erred in finding that the Department conducted classroom observations that satisfied those regulatory requirements.  Specifically, Cynthia K. contends that Vinciguerra's classroom observation was for the purpose of evaluating S.K.'s fine and gross motor skills and, therefore, did not address areas of academic performance and behavior, as required by the regulations.  She further contends that no other classroom observations were conducted for

the regulatory purpose, although she gave permission for classroom observation of S.K.'s "approach to academic tasks, his/her ability to deal with distractions, interactions with peers and other aspects of school behavior and performance." Doc. no. 10, at *6.

In response, the Department contends that evaluators and "Team members" observed S.K. and cites the hearing officer's finding that there were classroom observations. The Department notes the observations done by Vinciguerra, Reynolds, Bedard, and Deming. The Department also states that Lane, S.K.'s teacher, "had months of observing the student in the classroom setting." Doc. no. 16, at *12. The Department asserts that although those observations were not recorded on the evaluation summary document, that omission is of "no meaningful consequence." Id.

Vinciguerra, who is a licensed occupational therapist, did conduct a classroom observation of S.K. but she assessed only S.K.'s fine and gross motor skills. As such, Vinciguerra did not evaluate S.K. in the required areas of academic performance and behavior as part of her classroom observation. Bedard's observations and Reynolds's observations were done during individualized testing of S.K., not in the classroom setting.

Deming did a "Functional Behavior Assessment" of S.K. because of his noncompliant and unsafe behavior. That

assessment was done, however, before Cynthia K. requested
special education for S.K. and before she consented to classroom
observation for that purpose.  In addition, there is no
indication that Deming observed S.K. in the classroom to assess
his academic performance, which is required under § 300.310(a).
Further, after S.K.'s referral, the team chose to have classroom
observations done and obtained parental consent for that
purpose.  § 300.310(b)(1).  With respect to Lane's observations
of S.K., as his classroom teacher, the requirement for
classroom-based observations for purposes of evaluation is
separate from observations by teachers.  See
§ 300.305(a)(1)(ii); § 300.305(a)(1)(iii).  As with Deming's
assessment, there is no indication that the team decided to use
Lane's observations to satisfy the requirement under
§ 300.310(a).

Although the hearing officer did find that that classroom
observations were conducted and that the team considered
information from classroom observations, she did not
specifically find who conducted classroom observations or what
was observed.  The hearing officer's finding could mean that
Vinciquera's observations of S.K.'s motor skills were considered
and that Reynolds's and Bedard's observations during testing
were considered.  While that is all true, those observations do
not satisfy § 300.310.  Therefore, even with deference, the

hearing officer's finding is insufficient to support a conclusion that the Department's evaluation of S.K. for a specific learning disability was appropriate.

As a result, Cynthia K. has shown that the Department's evaluation of S.K. for a specific learning disability was not appropriate because it did not include the classroom observations that are required under § 300.305(a) and § 300.310.

## Conclusion

For the foregoing reasons, the hearing officer's decision is reversed.

Cynthia K. is entitled to an IEE at public expense for specific learning disability that includes classroom observations about S.K.'s academic performance and behavior issues.  The IEE may also address the use of Section 504 accommodations during testing and perform testing without accommodations if necessary.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

June 2, 2020

cc:  Counsel of Record.